pital, and that he could state what he did, and what was the condition of the patient.   He was asked: "Q. Now I ask you to state what condition Mr. Duggan was in at the time that you first saw him, that you treated him?"   It was objected that the question was incompetent and ·immaterial, and that "this was the physician who attended the plaintiff, who is not allowed to disclose matters discussed while treating him professionally," and the objection was sustained.   The learned counsel for the appellant argues with much ability and ingenuity that when the plaintiff called his own physician he waived his privilege, and that the policy of the law should not permit the plaintiff to close the mouth of Dr. Chamberlain.   But the statute, as interpreted, is against him.   It is held that what is seen by a physician in looking at the patient is within the privilege (Grattan v. Metropolitan Life Ins. Co., 92 N. Y. 274, 44 Am. Rep. 372); that it is not necessary that the physician should be employed by the patient, or that there should be a contract relation between them (Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770); that the plaintiff, by calling his physician to testify as to his disease and its treatment, does not waive his objection to the evidence of other physicians who had treated him at other periods (Hope v. Troy & Lansingburgh R. Co., 40 Hun, 438, affirmed in 110 N. Y. 643, 17 N. E. 873); and that although a patient gives evidence as to his condition both before his entrance to a hospital, and after he leaves it, he does not waive the privilege as to a physician who treated him in that interim (Barker v. Cunard Steamship Co., 91 Hun, 495, 36 N. Y. Supp. 256, affirmed in 157 N. Y. 693, 51 N. E. 1089).   Dr. Mackey and Dr. Chamberlain could only speak as to different periods.   If the waiver as to Dr. Mackey elicited evidence in reference to the same period as that when Dr. Chamberlain was in attendance, then a different question would be presented. The discrimination between the case at bar and the cases of Griffiths v. Met. St. Ry. Co., 171 N. Y. 106, 63 N. E. 808, and Green v. Met. St. Ry. Co., 171 N. Y. 201, 63 N. E. 958, is that in this case Dr. Chamberlain had testified that he was the ambulance surgeon who had charge of Mr. Duggan, that he recalled what he did for him, and that he treated him after he came to the hospital; and he was asked to state his condition at the time that he "first saw him, that he treated him."   He was therefore asked to speak in the relation of physician to patient.   The objection to the admission of his testimony was properly sustained.

The judgment and order should be affirmed, with costs.   All concur.

---

BROWN v. BROWN et al.

(Supreme Court, Appellate Division, Second Department.   January 23, 1903.)

1. WILLS—CONSTRUCTION—PARTIAL INTESTACY.

Where it was evident from testator's will that his main purpose was to divide his estate between his four children, and it was provided that on a sale of the major portion of the property the proceeds should be divided into four parts, and that from one of them a ·certain sum should be deducted, and the remainder paid to one child, by the general purpose of the division, as expressed, and by implication of law, the three

parts of which no express disposition was made should go to the three children whose parts were not diminished by the special provision applicable to one alone.

Appeal from Special Term, Kings County.

Action by Alfred S. Brown against Edward S. Brown and others and John A. Quintard and others. From the judgment, plaintiff and defendant Brown and some of the other defendants appeal. Affirmed.

Testator's will made various devises to his four children, and provided for certain payments to be made to them and to others monthly from the income from the greater portion of his estate until such time as the corpus of such portion of the estate should be sold. On such sale he directed that the proceeds should be divided into four parts, and he advised that the sale be made on the expiration of a certain lease for 26 years, or at such other time as his executors should deem advisable. He directed his executors to pay certain mortgages on his property, and provided that from one of the four parts before mentioned a certain sum should be deducted, and the balance paid to one of his sons.

. The following is the opinion of Russell, J., delivered at Special Term:

"The major purpose of the testator was to divide his property among his four children equally, except as to a deduction of $3,000 from the share of one for the very purpose of equalization of benefit. To accomplish that main object, the executors were given power to sell the real estate, power to sell personalty by provision of the will being unnecessary, and such power was unlimited by any superior controlling clause suspending the capacity to alienate during the term of any life. The directions to provisionally dispose of the income and to pay mortgages are simply guides to the executors for their necessary action during the interim between death and sale. The absence of precise directions as to what shall be done with three of the four parts of the proceeds does not destroy or alter any right. By the general purpose of the division, as expressed, and by implication of law, those three parts go to the three children whose parts are not diminished by the special provision applicable to one alone.

"Present proposed decision and judgment, with memoranda of counsel as to costs."

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Francis A. McCloskey, Jesse Silbermann, Louis J. Altkrug, and R. B. Kelly (Joseph Fettretch, of counsel), for appellants.

Hirsh & Rasquin, Max E. Lehman, and Albert C. Wheeler, for respondents.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of RUSSELL, J., at Special Term.

---

## WALTERS v. GEORGE A. FULLER CO.

(Supreme Court, Appellate Division, First Department. April 24, 1903.)

1. SERVANT'S INJURIES—SAFE APPLIANCES—OPERATION—NEGLIGENCE OF FELLOW SERVANT—LABOR ACT—CONSTRUCTION.

Section 18 of the labor law (Laws 1897, p. 461, c. 415), providing that a person employing another to perform labor in the erection or repair of a structure of any kind shall not furnish, for the performance of such labor, scaffolding or other mechanical contrivances which are unsafe or improper, and which are not so constructed, placed, and "operated" as to give proper protection to the person employed, does not impose on a